The primary issue in this field is whether during the process of claim construction a district court may import a process of manufacturing implementation into an apparatus claim. There is no extrinsic evidence that contradicts this extrinsic evidence and specifically the specification of the apparatus. Well, you kind of invited for the predicament you're in now, did you not, by suggesting in your own claim construction that perforated be a major portion of that, correct? Correct, but we've never suggested or argued that perforated requires piercing or puncture. The word perforated merely means having holes which are defined as openings or perforations. Well, except that the district court or the other side would think of that, I think, is that, well, that's not exactly what you said in the prosecution history, because there is a definition of perforated, of screening that includes perforated, and here you have the same screening, so why shouldn't you be left to how you defined it in the prosecution history? Because we did not define in the prosecution history the word perforated. Nowhere in the prosecution history was the definition of the word perforated an issue. Well, perforated isn't even in the claim, is it? Correct. What happened is, in this case... We're construing screening medium? We are construing screening medium, and a person of ordinary skill in the art recognizes that a screening medium is a perforated barrier, but perforated does not mean puncture or pierce. But you may be right about that, but the district court perhaps was a little bit off, but doesn't the prosecution history suggest that you start with a solid piece of metal, or perhaps a hammer or something like that, and put holes in it, as opposed to creating a screen by assembling multiple pieces of metal. The answer to that question is no. The prosecution history does not discuss whatsoever how the screening medium is formed. Nowhere in the prosecution history is there any discussion of how the screening medium is formed in the sense of not an issue to the prosecution. Well, I'm not sure if that's correct. The references at hand seem to come, sort of, with a solid metal plate, including holes in it. And in fact, the FEMA reference describes the industrial practice of creating these screening mediums, or perforated screening mediums, as described. And they all describe, sort of, starting with a solid piece and putting holes in it by cutting or piercing or punching, or various methodologies. I don't see any reference, for example, to FEMA, or the handbook of the prosecution history suggests that they're talking about creating a screen with multiple pieces of metal, as opposed to taking something solid and putting holes in it. Well, I think that the specification addresses that. The specification specifically states that wedge wire may be used. And the question is whether they gave that up. Well, then, in the prosecution history, well, I think that that's a fair point. But to give it up, there must be a statement during prosecution that wedge wire is excluded from the claim. Or that the word perforated means puncturing or piercing. And that never happened. Clearly, during prosecution, that did not occur. Well, but the word perforated may not include a puncture or piercing. It doesn't perforate, even if you start with a solid piece and put holes in it. In addition, claim, I believe, point one talks about a screen being made of ceramic. You cannot puncture or pierce ceramic. If you puncture or pierce ceramic, it will shatter. I think it's clear from the specification and the claims that the invention was in no way limited to making these openings by processing. But with ceramic, you wouldn't be able to start with a little piece of metal and make it into a screen. With little pieces of metal to make a part of it, with little pieces of ceramic to make a screen. Oh, absolutely. You're absolutely correct. What's the evidence that that was an industrial product? You can make a screening medium by using wire bars, which are made of ceramic, or by casting ceramic. Ceramic is made by casting it in a mold, just like liquid metal being cast in a mold. The prosecution history in this case, there was no dispute or discussion on how a screening medium must be formed. None whatsoever. It just was not an issue during prosecution. So to give this up by saying that advanced fiber indicated that a perforated barrier is a screening medium, I think is incorrect. Because advanced fiber took the ordinary definition of perforated to mean having holes in it. A perforated barrier means just having holes. And that's what the dictionary definition said. The problem that the district court had was it relied upon the wrong definition in dictionaries. It relied upon the dictionary definition of the verb perforate. Now the verb perforate means puncture or pierce. However, the adjective perforated does not. So is it a structural term, not a process term? Absolutely. And that is the problem. That's why we have reversible error in this particular case. But that doesn't address the problem. Whether you have to start with a single piece, either by doing it in a mold or cutting it or whatever, because that's what the handbook that they refer to in the prosecution history seems to comment on. But it's not explicit. And it doesn't explicitly say that it must start out as a piece of metal and be punctured or pierced. Nowhere in the handbook does it say that. But I think that's the standard. There's a disavowing, I would say, that it has to be punctured or pierced, but it certainly suggests that it's not, that you're starting with a single piece of metal or something like that and creating holes in it as opposed to starting with wire and constructing a bridge or a stream. No, I don't believe that it does suggest that. I don't believe that it is exclusive to that. And I don't believe that the prosecution history is relevant to that particular point. There was no discussion on how these spots or openings must be made in the prosecution history. Simply none whatsoever. The district court actually ignored the specification of that in its decision. The district court specifically stated that its definition of perforated was contradictory to the specification because the specification stated explicitly that wedge wire may be used. Is it your argument that screening medium itself includes wedge wire? Screening medium absolutely may include wedge wire. A wedge wire structure. Wedge wire are pieces of wire that are aligned together next to each other so that they create slots in between. And a screening medium may be made of wedge wire. It could also be made by taking metal and puncturing or piercing holes in it. But the specification clearly contemplates both. Both types of screening mediums. It places an eight with respect to eight words. But it's not a question of how many words. It's a question of whether or not the specification teaches that. And a person of ordinary skill in the art would recognize when the specification states that wedge wire may be used that wedge wire is covered by the plaintiff. And a review of the prosecution history does not dispute that because there's nothing in the prosecution history where, as Matt Sliber said, the definition of perforated means piercing or puncturing. Or that wedge wire is not covered by the plaintiff. It's simply not an issue during prosecution. Can I ask you a question you hate to talk about? And that is, we've got the other limitation with regard to the millimeters of the wedge wire. Assuming that we were agreeing with you on the perforation and that plain term, where does it leave the case? Do we agree with the district court on the limitation with respect to millimeters? Does that still mean non-infringement? Does that mean you have to go back and figure out what the other side does? It would mean that there is infringement, but the damage would be limited to whatever sales were for a speedy range of less than a quarter of an inch. Is there evidence on the record whether or not the products encompass a range of widths? Is there evidence on the record of what those ranges are at this point? So how could we measure a judgment of infringement beyond the size of the damage? Because JNL never argued that it did not during the course of litigation, including before the district court. Did not what? Did not argue that its slot sizes were less than a quarter of a millimeter because they were not. JNL's only argument of non-infringement was that its speedy range was much wider. So why was this even an issue, and why did this even come up? Because it was limited JNL's damage to infringement. That's why it was brought up. Would you like to say the amendment is done? Yes, sir, we're done. Thank you. Appropriated is the operative term, even though it does not appear in any of the claims. Or in the specification, although it does appear in the specification, it's quite a different term. But it appears it was imported into the claims because AFC acted as its own lexicographer during the issue and cited the handbook definitions to the patent office to overcome the Gillespie wedge-wise check. And thereby made perforated and imported that into every place you see screened in the claims. You can be your own lexicographer during prosecution as well. And there really is no excuse that perforated is bound by what you've asserted, not what you've said in your mind that you did. You can be by me here, but this court is in order to make it clear that once you choose to be your own lexicographer in prosecution, you are bound by that definition. And the recognition is, look at the claim construction they have proposed on appeal. It has the name of the word perforated. Now, as we pointed out in our brief, they actually had advocated below to Judge Kahn the word perforation. And then on appeal they criticized him for looking at the dictionary definitions of perforation. But didn't they also, didn't their proposed claim construction also say perforated or open? It wasn't limited to just perforation. It was perforation or – they proposed two different ones. Initially they proposed perforations or openings. I can give you the reference. It's actually in their briefs. They show how they progressed. And then ultimately they asked the judge to construe perforated because they understood they could act with it in a more established way. But they seem to agree that perforated is a relevant term. Correct. On prosecution. They just said the judge had the wrong definition of perforated, which doesn't appear to be a function of the court of law. It's always a question of the court of law. I agree. But they're trying to, in their brief, kind of lose track of the fact that they are the ones that imported perforated into the claim language. So we're really not – that's the operative term. We're really not construing screening medium in its large extent. We're past that because they defined screening medium to have a perforated barrier in it. Now, that gets us to what perforated means. And the judge correctly looked at and correctly construed that term by looking at dictionary definitions, including the dictionary definitions from the Standard Justice Dictionary of Holds that AST has cited. Now, in page A2378 of the power of the appendix is the technical dictionary that we can cite from the Gronkow Technical Dictionary. And it has perforated, meaning puncture or pierce. It has perforated completion. It's a well completion in which the production casing or liner is pierced. It goes on to talk about a perforated metal, which, as Your Honor pointed out, sheet metal with round, square, diamond, or rectangular perforations. It goes on, perforated plate. And as Your Honor pointed out, it contemplates making holes through something solid. And that is carried through into the perforated plate, which uses the word holes. And if we go to the Western Dictionary, which we'll turn to in more depth later, holes are defined as perforations. So we keep coming back to the word perforations, which is the word that they proposed to Judge Kahneman. And if you go down to the technical definition of perforation, it is any hole made by boring, punching, or piercing. So those are the technical dictionaries. No, it's not a process. And Your Honor has made clear in the Mighty Caves and other cases that if a patentee uses words that carry with them process connotations, there is absolutely nothing wrong with construing them the way they are ordinarily used to include those connotations. That would be the Mighty Caves. That was the case where there was the word insert in an apparatus claim. And there was the same argument made. And Your Honor's court said, well, look, you chose that word. You put it in your apparatus claim. And you have to take the connotations that come with it. There's nothing improper about that. We've reaffirmed that. So now turning to the Webster's Dictionary definitions. Perforate. And again, all of this goes back to the meaning of perforate and all of its various derivations. And the etymology of the word, as Webster has made clear, is in Latin, per, which means through, and forer, which means for. So you get this concept of forming through a vowel. Through a vowel. All of the definitions of perforate, perforated, perforations, including the standard dictionary definitions. So perforate specifically says to make a hole through. And then if you go to the definition of hole, which is on the next page, it says in opening through something, perforation. So, in fact, a hole is done through perforation. It's a particular type of hole. I feel like the whole issue is the definition of perforation. Whether it's binding in terms of the time-frame screening medium. I agree with you. The screening medium in and of itself looks like it covers the width line. Absolutely. And that's exactly why the examiner, in reissue, when he came across the Gillespie wedge-wire reference, said it was structurally indistinguishable from what they had claimed, from the very broad claim of the screening medium. And it was then that they became their own electrochirographer. Following up with your qualitative approach, do you believe that there can come to be a view on that point that the holes in the soft tissue need to be remanded because you did not do that? You didn't argue that you didn't infringe. We absolutely did argue that we didn't infringe. We argued that we had certain, about half of your shoes' products have slot widths that aren't within the maximum slot width. Yes, but your friend on the other side said that if we use the judgment of slot widths, it becomes a question of damages. Correct. You can see there's some infringement. Correct. You are questioning how much. There would be some infringement, except for we do have these validity issues that remain open and would have to be remanded. Pardon me. I'm sorry. Penalty would be due. The issue here is really not so much a claim disclaimer with respect to them using the word perforated. It is a them becoming their own lexicographer argument. And the court has made clear, also in the Sin Order 10 case, that once you become your own lexicographer during prosecution, you are stuck with the definitions that you have adopted, especially here, when they were trying to get around the way quite a lot of times. And at that point, what you say in the specification becomes much less significant. Well, this is kind of a step we move now. If they became their own lexicographer, it wasn't for purposes of construing screening. It was for purposes of saying that screening medium involved perforation. They didn't become their own lexicographer with respect to the prosecution history in terms of how limited perforation. Correct. But you do need to give perforated its own ordinary meaning. And that's the claim disclosure. And because of the rule that says that if there is any doubt about what a claim term means, it should be construed in favor of the public, the accused, the infringer, and against the party who picked those particular terms to claim their invention. They did not claim. They knew about wedge wire during the issue. They knew about my client's wedge wire construction. They very clearly could have claimed wedge wire. They didn't. They did just the opposite. They went narrow to get their initial claims about them. And then once we come out into prosecution, they go broad. Well, at this time, if that's correct, maybe I missed something. But in the prosecution history that I think you referred to on the last page, it seemed to me, or maybe I didn't make it, the context in which this so-called definition of screenplate means perforated was to this day making this argument which was ultimately rejected, right? That the palm heart treatment is different than the treatment of the word in other industries. It wasn't like it has to be perforation or else we're going to lose our path on validity, right? It was kind of a different context. It was slightly different. The examiner did say, I understand that Gillespie is not holding paper and that you're claiming your invention is limited. He made that very clear. So that wasn't the reason why he allowed the claims. After they redefined screening him to be perforated. This is a being your own ex-photographer situation. The spot with is a very clear prosecution disclaimer situation. I mean, I think we both agree that there's a distinction between the kind of prosecution that you're in the context of. But what we have here is they have now defined screening medium to import into it perforated. Now we need to determine what perforated is. And in the art, as well as in the patent, there is the reference to perforated plate at column two, line 66 and 67. And then at column eight. Perforated is not screened. Understood. That's the only type of cut it is. But it also goes on further to talk about what perforated means. And it says punched or drilled. That would be at column eight, lines 47 through 52. And again, at column 11, lines 15 through 70. So the patent specification itself is consistent with its punching, piercing, boring claim. Column eight, it's right around line 51, 52. That's the paragraph where it's talking about the batting plate, which is previously described as a perforated plate. It's a crazy term. But you could also use it. That's in order to maybe reconstruct any number of different arrangements. Sure, but it could be punched, for example, as well. And that would be perforated. In column 11, the word perforated was. Correct. Yeah, but it also doesn't say that that is a perforated body then. And you can use the specification after you've narrowed the claim language during the prosecution to then, in enforcement, broaden it again. And that's exactly what they're trying to do. Now, there is additional evidence of what people in the art, as Judge Dyke pointed out, understand perforated to mean. And that is the Johnson Screams brochure, in addition to the two articles, the Pima and the New Wave articles. We have a copy of this in our brief, but it's small. But if you look at page 935, this is a prior number brochure. And it is made by, it shows Johnson Screams, a well-known manufacturer of screams for use in pulp and paper and lots of other things. It shows a perforated plate pulled through a solid. It shows the wire mesh. And then here it describes what they refer to as V-shaped wires, which is the same as wedge wire. And they differentiate between the three. In the art, wedge wire is a different term than perforated. And we also show in Johnson that what the Johnson Screams wedge wire looks like at page 5 of our brief. It looks like the classic picket fence with flaps being this equivalent to the wires. And the spaces were interstices, one of my colleagues said. That's not a hole. That's an interstice between the slats. And that's what this is. And that's important because that's the way they designed their fence. Across the frame of the brief is cut out and the red line is on. That's not quite on. Rather, it's on backwards. Oh, thanks. Sorry. We're going to have to screen you off for a minute. There you go. Thank you. Let's see if we can get everyone to vote. Mr. Clark says you can adopt a perforation definition for the screen. And it's absolutely incorrect because the definition of perforation is not the definition at issue. It's perforated to the extent that the district court judge incorporated perforated into his construction of the screening medium. I agree with Mr. Clark. It is the ordinary definition of perforated, which was at issue. You only said perforated is the right term. Perforated is the correct term when construed consistent with the specification. So again, we are disagreeing about what perforated means or what it's not. Absolutely. We are disagreeing with what perforated means. The district court found perforated means too perforated. Instead of just looking at the ordinary Merriam-Webster's dictionary of the word perforated. Well, perforated does not include white wire. It just means perforated. Well, if you look up the definition of perforated, you're not going to see white wire there. What you will see is having holes or perforations. And the definition of holes is openings in the same dictionary. So perforated means having holes or openings. Having holes in what would otherwise be solid. That's right. Exactly. And white wire is not that. It is. It has holes in it. It's not built to have openings. If you build it together, it would be solid. You build it so it's face apart, so it would have openings in it. Here's what happened during prosecution. During prosecution, the claims were rejected over Gillespie. Gillespie was distinguished on the basis that it did not disclose a screening cylinder. It did not disclose the process of separating wood pulp fibers from other particles. It was not a screen cylinder and did not have a screening unit. It was not distinguished on the basis that it was punctured or pierced. In fact, that was not discussed at all during prosecution. And if you read the prosecution history, it's fairly clear that Gillespie was distinguished on the basis that it was not a screen cylinder. It did not function to separate particles from wood pulp fibers. That's it. Perforated, the definition of perforated was not an issue during prosecution. There's no leptococcus issue. And there's no disclaimer of subject matter issue. Isn't this the court saying, hey, as he suggests the term means having holes or perforation? Absolutely. Having holes or perforation. And the definition of holes is openings. That is absolutely correct. And that is a definition which is consistent with the specification. And in construing claims, the specification is the primary guide to construing claims. So we should be construing claims so that they are consistent with the specification. And having holes or perforations, when the definition of holes is just an opening, is consistent with the specification discussion of wedge wires being used. I think this case, that is certainly dealing with a broad definition of perforation. Perforation is not the word that needs to be. So defideration is different from perforate. Absolutely. Perforate is a verb. Perforation is a noun. And perforate is an adjective. They all have different definitions in the regular ordinary dictionaries. But the definition of perforated is the one that should have been used by the district court. And it was not. And the definition of perforated simply means having holes. But if it wasn't the definition of holes, it means openings or perforations. That's why the district court is very inclined to structure. I see my time is up. Thank you, Mr. Saini. Good luck. Thank you. Thank you, guys.